UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12004-RWZ

JENNIFER TONNESON

v.

CAMBRIDGE COLLEGE and
EILEEN BROWN

MEMORANDUM OF DECISION

August 29, 2011

ZOBEL, D.J.

Plaintiff Jennifer Tonneson brings this 15-count complaint against her former employer, Cambridge College and its former Acting President and Chancellor, Eileen Brown, for gender discrimination and retaliation in violation of Mass. Gen. Laws ch. 151B, § 4, breach of contract, defamation, and several additional statutory violations and common law torts arising out of her termination. Defendants move to dismiss several counts of the complaint.

I. **Factual Background**

Tonneson was hired by Cambridge College in 2004 to be its Vice President of Finance & Administration. Each year she executed a one-year contract which set forth the terms of her employment. She was initially hired by then-President Mahesh Sharma, who was himself terminated after an investigation in 2008. Defendant Brown was then named Acting President. Tonneson's employment was terminated shortly

thereafter.

She now contends that despite consistently receiving positive performance reviews, she was terminated without notice in breach of her employment contract, and that her termination was due to her allegations of improprieties regarding personal expenses defendant Brown charged to the College. Cambridge College insists that Tonneson was an at-will employee terminated in compliance with her employment contract due to performance issues.

Defendants move to dismiss Counts I-VI, IX-X, and XII-XIV.

## II. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the court to appraise the legal sufficiency of the complaint, not whether a plaintiff will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks and citation omitted). At the same time, a court must accept all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008). Dismissal is only appropriate if the pleadings fail to support "'a plausible entitlement to relief.'" Rodriguez–Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967 (2007)).

Several claims are based upon violations of Massachusetts law; thus the court

2

must look to the constructions placed upon these statutes by Massachusetts courts. See Woods v. Friction Materials, Inc., 30 F.3d 255, 263 (1st Cir.1994), abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

Defendants assert discrete grounds for dismissing each of the allegedly inadequate counts. I address each count in turn.

### III. Discussion

#### A. Count I: Breach of Contract (Against Defendant Cambridge College)

Plaintiff first claims that Cambridge College breached its employment contract with her when it terminated her without cause and without notice.

To prevail on a claim for breach of contract, a plaintiff must allege "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 351 (D. Mass. 2011) (citations omitted).

First, there is a dispute as to what constitutes the employment contract. No contract was attached to the complaint. Defendants point to a written letter agreement dated August 13, 2007, signed by both parties, which delineates the key parameters of Tonneson's employment. See Defs.' Mem. of Law in Support of their Mot. To Dismiss, Ex. A. Plaintiff, however, alleges the existence of a supplemental verbal agreement.

Although a court is ordinarily prohibited from looking beyond the four corners of a complaint when appraising its sufficiency under Rule 12(b)(6), courts have long recognized "exceptions for documents the authenticity of which are [sic] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for

3

documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In the absence of any written documentation provided by plaintiff, this court can consider the 2007 employment agreement.[1]

The 2007 employment agreement contains no provision requiring that termination be for cause. While it does contain a provision requiring 30 days' notice prior to termination, it also states that in lieu of providing such notice, the College may pay 30 days' additional salary, or severance.[2] Defendants contend that plaintiff was paid 30 days' salary. Plaintiff appears to dispute this. See Compl. ¶¶ 50-51; 65-66; 90. In light of this dispute, dismissal of this claim is not warranted at this stage.

**B.    Counts II and III: Defamation (Against Both Defendants)**

Plaintiff's claims of defamation focus on statements to various publications, including comments by defendants to the Boston Globe which appeared in an article published on July 14, 2008. She points to the statements by Brown that Tonneson "was associated with the defendant College's terminated President Mahesh Sharma"; "was no longer with the university"; that her departure was a "mutual decision" and that

---

[1] Plaintiff does not appear to dispute the validity of the 2007 contract; rather she contends it is not the entirety of the agreement.

[2] The 2007 employment agreement states, in pertinent part:

"The College may terminate this agreement by giving you not less than thirty calendar days notice or, at the College's election, in lieu of providing you with this full notice, the College may pay you the difference between the salary you would have received if the College had provided thirty calendar days notice and the amount of salary you receive due to a decision by the College to terminate your employment with less than thirty days notice."

4

"the college had declined to grant [Tonneson] the severance package she requested."[3] See Compl. ¶¶ 69-72.

Under Massachusetts law, a defamation claim has five elements: "(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss." Noonan v. Staples, Inc., 566 F.3d 20, 25 (1st Cir. 2009); see also Phelan v. May Dep't Store Co., 819 N.E. 2d 550, 553 (Mass. 2004).

Defendants concede making the comments at issue. Such comments, they assert, are, however, absolutely protected under two defenses: (1) they were truthful; and (2) the subject matter (misuse of funds) is a matter of public concern.

Truth is an absolute defense to a defamation action under Massachusetts law. See Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 47 N.E.2d 595, 598 (1943). Here, plaintiff does not argue that the allegedly defamatory statements were literally false. At the time the statements were made, she no longer worked at the College; it had declined to grant her the severance package she requested. Nor does she allege the remaining comments were false, only, at worst, misleading. Accordingly, the defamation claims may be dismissed.

### C. Count IV: Intentional Infliction of Emotional Distress (Against Defendant Brown)

---

[3]The comments that appeared in the Boston Globe were republished in several other academic and professional publications, including the Chronicle of Higher Education.

Plaintiff's claims of intentional and negligent infliction of emotional distress appear to derive from defendants' hiring the Eagan Group, a private investigation firm, to investigate an anonymous newsletter circulated to members of the College community which criticized the administration. As part of the firm's investigation, several former FBI agents interviewed plaintiff, and 24 hours later, she was terminated without notice and without cause. Plaintiff contends that Brown's conduct was "extreme in degree and outrageous in character" and it resulted in "the intentional and reckless infliction of emotional distress." Compl. ¶ 103.

Intentional infliction of emotional distress requires proof of four elements under Massachusetts law: "(1) defendant intended to inflict emotional distress or knew or reasonably should have known that emotional distress was likely to result from such conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the defendant's conduct proximately caused plaintiff's emotional distress; and (4) the distress was so "severe that no reasonable man could be expected to endure it." Davignon v. Clemmey, 322 F.3d 1, 8 (1st Cir. 2003) (citations omitted).

The intentional tort requires acts that are "extreme and outrageous," either reasonably viewed as an attempt to "shock and harm a person's peace of mind," or "if not individually such, are part of a pattern of harassment intended to accomplish the same end." Smith v. Jenkins, 718 F. Supp.2d 155, 172 n.26 (D. Mass. 2010) (internal citations omitted). Here, plaintiff's allegations do not meet the high standard for "extreme and outrageous" behavior. At worst, plaintiff alleges that she was terminated

6

without cause in retaliation for her being a whistleblower, discriminated against on the basis of her gender, the subject of defamatory remarks, and questioned by an outside investigatory group. Even if true, such conduct is not "beyond all bounds of decency and ... utterly intolerable in a civilized community." Id.

### D. Count V: Negligent Infliction of Emotional Distress (Against Both Defendants)

Negligent infliction of emotional distress requires plaintiff to demonstrate: "(1) [defendant's] negligence; (2) [her] emotional distress; (3) causation; (4) objective evidence of physical manifestation of mental distress; and that (5) a reasonable person would have suffered emotional distress under the circumstances of the case." Baldwin v. Pilgrim Nuclear Power Station, 529 F. Supp. 2d 204, 212 (D. Mass. 2008) (citing Sullivan v. Boston Gas Co., 414 Mass. 129, 132, 137-138, 605 N.E.2d 805 (1993)). Plaintiff has failed to allege any physical manifestation of mental distress. Accordingly, her claim is dismissed.

### E. Count VI: Intentional Interference with Advantageous and/or Contractual Relations (Against Defendant Brown)

To make out her claim that Brown "willfully and intentionally" interfered with her advantageous and/or contractual relationship with the College, Compl. ¶ 113, plaintiff has to establish that: "(1) [she] had an advantageous employment relationship with her employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) [she] was harmed by the defendant's actions." Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77, 88 (1st Cir. 2004) (citing Weber v. Cmty.

7

Teamwork, Inc., 434 Mass. 761, 781, 752 N.E.2d 700 (2001)).

Where, as here, the defendant is an official of the third party employer or a supervisor of the plaintiff, courts have applied a heightened standard requiring actual, rather than implied, malice. "[A] supervisor who discharges or recommends discharge of an employee is not liable for interference with the employee's contract or business relations unless the supervisor's actions were motivated by actual malice." Galdauckas v. Interstate Hotels Corp. No. 16., 901 F. Supp. 454, 465 (D. Mass. 1995). The Massachusetts Supreme Judicial Court ("SJC") has concluded that the heightened standard is necessary to protect the freedom of corporate officers in "matters related to the conduct of the internal affairs of a corporation." Blackstone v. Cashman, 448 Mass. 255 265, n. 15 (Mass. 2007). Plaintiff does not specify which of Brown's actions were carried out with improper means and/or motive. Assuming plaintiff is referring to lack of notice and/or lack of cause with respect to her termination, the termination letter is from the College, not Brown. Elsewhere in the complaint, plaintiff contends that Brown made defamatory statements and engaged in other misdeeds. She does not allege, however, that those actions caused her termination. The motion to dismiss Count VI is therefore allowed.

### F. Count IX: Invasion of Privacy (Against Both Defendants)

Plaintiff next claims invasion of privacy by the College in that it "condon[ed], releas[ed] and/or fail[ed] to prevent Tonneson's employment records to be released, in violation of M.G.L. ch. 214, § 1B and M.G. L. 149, § 52C." Complaint ¶¶ 127-129. It did so by revealing her employment status when commenting to the Boston Globe that she

"was no longer with the university." Id. at ¶¶ 69, 76.

To prevail on a claim for invasion of privacy, plaintiff must establish "that the disclosure was both unreasonable and either substantial or serious." Mass. Gen. Laws ch. 214, § 1B; Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 (2005).[4] In the employment context, courts have recognized that they must "balance the employer's legitimate business interest in obtaining and publishing the information against the substantiality of the intrusion on the employee's privacy relating from the disclosure." Id. at 383.

The SJC has held that "disclosures ... limited to the plaintiff's professional involvement in a matter that already was the focus of a high degree of public scrutiny and interest ... are outside the protection of M.G.L. ch. 214, § B." Id. at 384-385. Here, Tonneson's employment was in the public eye due to media coverage of the change in personnel at the College. The College provided truthful information about her employment status, which was by then a matter of public interest.

Mass. Gen. Laws ch. 149, § 52C governs how employers handle personnel records with regard to "employment, promotion, transfer, additional compensation or disciplinary action."[5] It further allows an employee to review her personnel record upon

---

[4]Mass. Gen. Laws ch. 214, § 1B provides "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

[5]Mass. Gen. Laws ch. 149, § 52C provides, in relevant part: "'Personnel record' a record kept by an employer that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation or

9

written request. Plaintiff has failed to describe how defendants allegedly violated this statute.

### G. Count X: Violation of Title IX of the Higher Education Amendments of 1972 (Against Both Defendants)

Title IX of the Higher Education Amendments of 1972 guarantees that "no person in the United States shall, on the basis of sex, be excluded form participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a).

The gravamen of plaintiff's complaint is that defendants terminated her on account of her gender and paid her less in severance than her terminated male colleagues. See Compl. ¶¶ 32-33; 74. She further contends that she was terminated in retaliation for reporting defendants' illegal use of federal and College funds. See Compl. ¶¶ 80-81, 140.

First, Title IX's right of action "extends only to claims against the educational institution itself." Frazier v. Fairhaven Sch. Cmte., 276 F.3d 52, 65 (1st Cir. 2002). Consequently, this claim is dismissed as to defendant Brown.

Second, to state a claim for a violation of Title IX, plaintiff must allege facts sufficient to demonstrate "(1) protected participation or opposition under Title [IX] known by the alleged retaliator; (2) an ... action or actions disadvantaging persons engaged in protected activities; and (3) a causal connection between the first two

---

disciplinary action."

elements[,] that is[,] a retaliatory motive playing a part in the adverse ... actions." Frazier v. Fairhaven Sch. Committee, 122 F. Supp.2d 104, 113 (D. Mass. 2000) (citing Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993)).

Here, plaintiff has alleged that she was terminated in retaliation for her "complaining of [the College's] disparate gender treatment." Compl. ¶ 74. She has thus adequately pled a claim against the College under Title IX.

### H. Count XII: Violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11 I (Against Both Defendants)

Count XII alleges that defendants violated the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and 11I, by terminating her in retaliation for reporting defendants' "illegal appropriations of federal and College funds." See Compl. ¶¶ 80-81, 140. By so doing, she further alleges, the College violated her "rights under state law to be free from harassment, threats, intimidation and/or coercion." Id. at ¶ 140.

To sustain a claim under Mass. Gen. Laws ch. 12, § 11H, a plaintiff must demonstrate that "(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Meuser v. Federal Express Corp., 524 F. Supp. 2d 142, 147 -148 (D. Mass. 2007) (internal citations omitted).[6]

---

[6]Mass. Gen. Laws ch. 12, § 11H provides, in pertinent part: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the

11

> Under the MCRA,
>
> > a threat consists of the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.... Intimidation involves putting in fear for the purpose of compelling or deterring conduct... Coercion is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

Id. at 147 (citing Haufler v. Zotos, 446 Mass. 489, 845 N.E.2d 322, 335 (2006) (internal quotation marks and citations omitted)).

Courts have recognized that the statute's language gives rise to some ambiguity. Courts initially required some "actual or potential physical confrontation accompanied by a threat of harm." Carvalho v. Town of Westport, 140 F. Supp.2d 95, 101 (D. Mass. 2001). However, that requirement has since been relaxed. See Buster v. George W. Moore, Inc., 438 Mass. 635, 783 N.E.2d 399, 411 (2003).

The question of whether termination is sufficient economic coercion under the statute has also been unsettled. However, several courts have found that termination in retaliation for protected speech does in fact give rise to a cause of action under the statute. See Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 502 N.E. 2d 1375 (1987), Acciavatti v. Professional Servs. Group, 982 F. Supp. 69, 78-79 (D. Mass. 1997) and Bally v. Northeastern Univ., 403 Mass. 713, 719 (1989). But see Korb v. Raytheon Corp., 410 Mass. 581, 585 (1991).

---

constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured." Mass. Gen. Laws ch. 12, § 11I provides individuals with a private right of action to remedy violations of § 11H.

Accordingly, plaintiff has adequately alleged an MCRA claim against Cambridge College. However, she has not done so with respect to defendant Brown, as it was the College that issued the termination letter, not Brown, and she has not sufficiently alleged that Brown was responsible for her termination.

I. **Counts XIII and XIV: Violations of 42 U.S.C. § 1983, First and Fourteenth Amendments (Against Both Defendants)**

Plaintiff's final counts allege violations of her First and Fourteenth Amendment rights by a defendant acting "under color of" state law. 42 U.S.C. § 1983. Plaintiff now concedes that she cannot establish state action and has withdrawn Counts XIII and XIV. See Docket # 10, Pl's Mem. of Law in Opp. to Deft's Mot. to Dismiss at 25. Accordingly, these counts are dismissed.

IV. **Conclusion**

Defendants' motion to dismiss (Docket # 5) is ALLOWED as to Counts II-VI, IX, and XIII and XIV and DENIED as to Count I. With respect to Counts X and XII, the motion to dismiss is ALLOWED as to defendant Brown and DENIED as to defendant Cambridge College.

| August 29, 2011 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |